## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

**MICHAEL HEBERT (#263630)**                                    **CIVIL ACTION**

**VERSUS**

**CITY OF BATON ROUGE, ET AL.**                                **NO. 15-850-JWD-RLB**

### NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law and recommendations therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on March 29, 2017.

_____
**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

**MICHAEL HEBERT (#263630)**                              **CIVIL ACTION**

**VERSUS**

**CITY OF BATON ROUGE, ET AL.**                          **NO. 15-850-JWD-RLB**

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Before the Court is the Motion to Dismiss filed by defendant Dr. Rani Whitfield (R. Doc. 64). This motion is not opposed.

The *pro se* plaintiff, an inmate previously confined at the East Baton Rouge Parish Prison ("EBRPP"), Baton Rouge, Louisiana, filed this action pursuant to 42 U.S.C. § 1983 against the City of Baton Rouge, the Parish of East Baton Rouge, LCS Corporation, Inc., Dennis Grimes, Terry Hines, Sid Gautreaux, Rani Whitfield, and Charles Bridges alleging that is constitutional rights were violated due to deliberate indifference to his health and serious medical conditions. The plaintiff seeks monetary, declaratory, and injunctive relief.

Defendant Dr. Whitfield asserts, *inter alia*, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, that the plaintiff has failed to state a claim upon which relief may be granted. In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court clarified the standard of pleading that a plaintiff must meet in order to survive a motion to dismiss pursuant to Rule 12(b)(6). Specifically, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, *supra*, at 555. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, *supra*, 556 U.S. at 678, *quoting Bell Atlantic Corp. v. Twombly*, *supra*. "A claim has

facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. It follows that, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.' " *Id*. at 679. "Where a Complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.' " *Id*. at 678 (internal quotation marks omitted).

On a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court "must accept as true all of the factual allegations contained in the Complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Further, "[a] document filed *pro se* is 'to be liberally construed' ... and 'a *pro se* Complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.' " *Id*. (citation omitted). Notwithstanding, the court need not accept "a legal conclusion couched as a factual allegation," *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or "naked assertions [of unlawful conduct] devoid of further factual enhancement." *Ashcroft v. Iqbal*, *supra*, 556 U.S. at 678 (internal quotation marks omitted).

In his Complaint, the plaintiff alleges the following with regards to Dr. Whitfield: Due to overcrowding at the EBRPP, the plaintiff was temporarily housed at the Pine Prairie Correctional Center ("PPCC") between August 20, 2013 and February 4, 2014. While housed at PPCC, the plaintiff was forced to consume water that was contaminated with unsafe levels of arsenic, as evidenced by an EPA notification posted at PPCC. The plaintiff exhibited persistent cold symptoms, and on or about February 4, 2014, the plaintiff noticed a lump in his left calf. The lump was evaluated by a doctor at PPCC but no testing or treatment was provided. The plaintiff was diagnosed with a blood clot. The plaintiff was subsequently transferred back to the EBRPP,

and on February 17, 2014 the plaintiff was seen by defendant Dr. Whitfield. The plaintiff was returned to his cell without any tests, lab work, or treatment being performed. Dr. Whitfield knew that EBRPP prisoners were being exposed to contaminated water at PPCC and that PPCC had been fined by the Environmental Protection Agency due to the same, but failed to order tests, lab work and provide treatment in order to avoid the costs of his care.

In September of 2014, the plaintiff lost vision in his right eye. On October 3, 2014, the plaintiff sought treatment due to several painful and discolored lumps on his legs, arms, back, stomach and chest. The plaintiff was examined by defendant Dr. Whitfield on October 13, 2014. Dr. Whitfield ordered lab work which later revealed that the plaintiff's white blood count was extremely high. The plaintiff was transported to Tulane University Medical Center on November 4, 2014 and the plaintiff was diagnosed with chronic myelogenous leukemia ("CML") on November 13, 2013.

The plaintiff asserts that Dr. Whitfield's failure to order basic lab work or tests for eight months constitutes medical malpractice and deliberate indifference to his serious medical needs, evidenced by the intentional denial of testing and treatment undertaken to avoid the astronomical costs associated with cancer treatment. The plaintiff further asserts that the delay in care eliminated available early treatments by the time the cancer was finally diagnosed in November of 2014.

Regarding the plaintiff's claim of deliberate indifference to his serious medical needs, in order for there to be liability, an inmate plaintiff must sufficiently allege that appropriate medical care has been denied and that the denial has constituted "deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Johnson v. Treen*, 759 F.2d 1236, 1237 (5th Cir. 1985). Whether the plaintiff has received the treatment or accommodation that he

believes he should have is not the issue. *Estelle v. Gamble*, *supra*. Nor do negligence, neglect, unsuccessful treatment, or even medical malpractice, give rise to a § 1983 cause of action. *Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991). Rather, "subjective recklessness as used in the criminal law" is the appropriate definition of "deliberate indifference" under the Eighth Amendment. *Farmer v. Brennan*, 511 U.S. 825, 839–30 (1994). As stated in *Farmer*, to be liable on a claim of deliberate indifference, an official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. at 837. The deliberate indifference standard sets a very high bar: the plaintiff must be able to establish that the defendants "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Domino v. Texas Dept. of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001), *quoting Estelle v. Gamble*, *supra*. Further, a mere delay in providing medical treatment does not amount to a constitutional violation without both deliberate indifference and a resulting substantial harm. *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993).

In the instant matter, the plaintiff alleges that Dr. Whitfield was aware of a substantial risk of harm to the plaintiff, specifically cancer induced by ingesting water containing unsafe levels of arsenic, and intentionally treated him incorrectly to avoid the costs of his care. Accordingly, the plaintiff's Complaint as amended states a claim for deliberate indifference to his serious medical needs against defendant Dr. Whitfield.

As for the plaintiff's state law claims, defendant Dr. Whitfield contends that these claims sound in medical malpractice, and as a result, the plaintiff's claims are premature because they have not been presented to a Medical Review Panel as required by Louisiana law. With regards

to any medical malpractice claims that the plaintiff attempts to assert against defendant Dr. Whitfield, the Court finds that such claims are premature, as the defendant is a qualified healthcare provider pursuant to Louisiana law[1] and the claims have not been presented to a Medical Review Panel as required by Louisiana Revised Statute 40:1231.8.[2]  Accordingly, the state law medical malpractice claims against defendant Dr. Whitfield should be dismissed, without prejudice.

Finally, Defendant Dr. Whitfield asserts that the plaintiff's claims against him should be dismissed for failure to exhaust administrative remedies prior to filing a Complaint.  Dr. Whitfield asserts that the plaintiff failed to file a grievance within 90 days of the complained of event in accordance with the Inmate Grievance Procedure at the EBRPP.

Pursuant to 42 U.S.C. § 1997e, the plaintiff was required to exhaust administrative remedies available to him at the prison prior to commencing a civil action in this Court with respect to prison conditions.[3]  This provision is mandatory and applies broadly to "all inmate suits about prison life." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).  Further, a prisoner must exhaust administrative remedies by complying with applicable prison grievance procedures before filing a suit relative to prison conditions. *Johnson v. Johnson*, 385 F.3d 503, 517 (5th Cir. 2004).  Not only must the prisoner exhaust all available remedies, but such exhaustion must be proper, including compliance with an agency's deadlines and other critical procedural rules. *Woodford v. Ngo*, 548 U.S. 81, 90 (2006).  One of the principal purposes of the administrative

---

[1] *See* R. Doc. 64-2.
[2] Louisiana Revised Statute 40:1231.8 provides in pertinent part:  "All malpractice claims against health care providers covered by this Part, other than claims validly agreed for submission to a lawfully binding arbitration procedure, shall be reviewed by a medical review panel established as hereinafter provided for in this Section…No action against a health care provider covered by this Part, or his insurer, may be commenced in any court before the claimant's proposed complaint has been presented to a medical review panel established pursuant to this Section…"
[3] 42 U.S.C. § 1997e(a) provides: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."

exhaustion requirement is to provide fair notice to prison officials of an inmate's specific complaints so as to provide "'time and opportunity to address complaints internally.'" *Johnson v. Johnson*, *supra*, 385 F.3d at 516, *quoting Porter v. Nussle*, *supra*, 534 U.S. at 525. Further, the degree of specificity necessary in a prisoner's grievance should be evaluated in light of this intended purpose. *Id.*

According to the plaintiff's Complaint as amended, the plaintiff filed a grievance within 90 days of acquiring knowledge of his claim. Prior to that time, the plaintiff alleges that he had been lulled by the defendants into believing that his cancer was caused by heredity or exposure to radiation, rather than ingestion of water contaminated with arsenic. Accepting the allegations of the Complaint as true for the purposes of evaluating this Motion, the Court cannot, at this time, conclude that the plaintiff failed to exhaust his administrative remedies prior to filing suit.

## RECOMMENDATION

It is the recommendation of the Magistrate Judge that the defendant's Motion to Dismiss (R. Doc. 64) be granted in part, and the plaintiff's medical malpractice claims against defendant Dr. Whitfield be dismissed, without prejudice. It is further recommended that in all other regards, the defendant's Motion (R. Doc. 64) be denied.

Signed in Baton Rouge, Louisiana, on March 29, 2017.

_____
**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**