**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

**MICHAEL HEBERT (#263630)**                                          **CIVIL ACTION**

**VERSUS**

**CITY OF BATON ROUGE, ET AL.**                                      **NO. 15-850-JWD-RLB**

<u>RULING</u>

This matter comes before the Court on the Motion for Summary Judgment filed on behalf

of defendants LCS Corrections Services ("LCS") and Terry Hines ("Hines") (R. Doc. 391).  This

Motion is opposed.  *See* R. Doc. 394.

The *pro se* plaintiff, an inmate previously confined at the East Baton Rouge Parish Prison

("EBRPP"), Baton Rouge, Louisiana, filed this action pursuant to 42 U.S.C. § 1983 against

numerous defendants alleging that his constitutional rights were violated due to deliberate

indifference to his health and serious medical conditions.  The plaintiff seeks monetary,

declaratory, and injunctive relief.

Defendants LCS and Hines move for summary judgment relying upon the pleadings, a

Statement of Undisputed Material Facts, and the Affidavit of Richard Harbison.  The plaintiff

opposes the motion relying upon the pleadings, a Statement of Undisputed Facts, his own

Declaration, and various exhibits as listed in Record Document 352 and attached to Record

Document 394.

Pursuant to well-established legal principles, summary judgment is appropriate where

there is no genuine disputed issue as to any material fact, and the moving party is entitled to

judgment as a matter of law.  Rule 56, Federal Rules of Civil Procedure.  *Celotex Corp. v.*

*Catrett*, 477 U.S. 317 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986).  A party

moving for summary judgment must inform the Court of the basis for the motion and identify

those portions of the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, that show that there is no such genuine issue of material fact. *Celotex Corp. v. Catrett*, *supra*, 477 U.S. at 323. If the moving party carries its burden of proof under Rule 56, the opposing party must direct the Court's attention to specific evidence in the record which demonstrates that the non-moving party can satisfy a reasonable jury that it is entitled to a verdict in its favor. *Anderson v. Liberty Lobby, Inc.*, *supra*, 477 U.S. at 248. This burden is not satisfied by some metaphysical doubt as to alleged material facts, by unsworn and unsubstantiated assertions, by conclusory allegations, or by a mere scintilla of evidence. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). Rather, Rule 56 mandates that summary judgment be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, *supra*, 477 U.S. at 323. Summary judgment is appropriate in any case where the evidence is so weak or tenuous on essential facts that the evidence could not support a judgment in favor of the non-moving party. *Little v. Liquid Air Corp.*, *supra*, 37 F.3d at 1075. In resolving a motion for summary judgment, the Court must review the facts and inferences in the light most favorable to the non-moving party, and the Court may not evaluate the credibility of witnesses, weigh the evidence, or resolve factual disputes. *International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991).

In his Complaint, the plaintiff alleges the following with regards to defendants LCS and Hines: Due to overcrowding at the EBRPP, the plaintiff was temporarily housed at the Pine Prairie Correctional Center ("PPCC") between August 20, 2013 and February 4, 2014, during which time PPCC was owned by LCS and Hines was the warden. While housed at PPCC, the plaintiff was forced to consume water that was contaminated with unsafe levels of arsenic, as

evidenced by an EPA notification posted at PPCC indicating that LCS had been fined by the EPA for maintaining a water system with unlawfully high levels of arsenic in the water supply.

On or about February 4, 2014, the plaintiff began exhibiting persistent cold symptoms and noticed a lump in his left calf.  The lump was evaluated by a doctor at PPCC but no testing or treatment was provided.  In September of 2014, the plaintiff lost vision in his right eye.  On October 3, 2014, the plaintiff sought treatment due to several painful and discolored lumps on his legs, arms, back, stomach and chest.  The plaintiff was examined by defendant Dr. Whitfield on October 13, 2014.  Dr. Whitfield ordered lab work which later revealed that the plaintiff's white blood count was extremely high.  The plaintiff was transported to Tulane University Medical Center on November 4, 2014 and the plaintiff was diagnosed with chronic myelogenous leukemia ("CML") on November 13, 2014.

LCS owned and operated PPCC between the period of August 20, 2013 and February 4, 2014 during which time the plaintiff was deliberately exposed to dangerous levels of arsenic in the water.  Hines, as the warden, was responsible for providing safe drinking water and failed to do so.

The moving defendants assert, *inter alia*, that they are entitled to qualified immunity in connection with the plaintiff's claims.  Specifically, defendants LCS and Hines contend that the plaintiff's allegations and evidentiary showing fail to show the existence of a genuine issue of disputed fact relative to any alleged violation of the plaintiff's constitutional rights.

The qualified immunity defense is a familiar one and, employing a two-step process, operates to protect public officials who are performing discretionary tasks.  *Huff v. Crites*, 473 F. App'x. 398 (5th Cir. 2012).  As enunciated in *Saucier v. Katz*, 533 U.S. 194 (2001), the first step in the analysis is to consider whether, taking the facts as alleged in the light most favorable to the

plaintiff, the defendant's conduct violated the plaintiff's constitutional rights. *Id.* at 201.

Second, the district court looks to whether the rights allegedly violated were clearly established.

*Id.* This inquiry, the Court stated, is undertaken in light of the specific context of the case, not as

a broad, general proposition. *Id.* The relevant, dispositive inquiry in determining whether a

constitutional right was clearly established is whether it would have been clear to a reasonable

state official that his conduct was unlawful in the situation which he confronted. *Id.* at 202. The

assertion of the qualified immunity defense alters the summary judgment burden of proof.

*Michalik v. Hermann*, 422 F.3d 252, 262 (5th Cir. 2005). Once a defendant pleads qualified

immunity, the burden shifts to the plaintiff, who "must rebut the defense by establishing that the

official's allegedly wrongful conduct violated clearly established law and that genuine issues of

material fact exist regarding the reasonableness of the official's conduct." *Gates v. Texas*

*Department of Protective and Regulatory Services*, 537 F.3d 404, 419 (5th Cir. 2008), *citing*

*Michalik v. Hermann, supra*, 422 F.3d at 262.[1] Undertaking the qualified immunity analysis

with respect to the plaintiff's claims that the defendants were deliberately indifferent to his

serious medical needs, the Court finds that the Motion for Summary Judgment should be granted.

A jail official's treatment of a pretrial detainee is governed by the substantive protections

of the Due Process Clause of the Fourteenth Amendment whereas, upon conviction, such

treatment is evaluated under the Eighth Amendment's prohibition against cruel and unusual

punishment. The Due Process Clause protects the detainee's right to be free from punishment

prior to an adjudication of guilt. *See Bell v. Wolfish,* 441 U.S. 520, 535–36.

---

[1] The United States Supreme Court has held that rigid chronological adherence to the *Saucier* two-step methodology is not mandatory. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). Although the *Saucier* methodology will be "often beneficial", the Court in *Pearson* leaves to the lower courts discretion as to the order in which they may wish to address the two prongs of the qualified immunity analysis. *Id.*

The claims made by the plaintiff against LCS and Hines regarding his conditions of confinement are directed toward general conditions of confinement experienced by him as a pre-trial detainee and are to be analyzed under the test enunciated in *Bell v. Wolfish,* 441 U.S. 520, 539 (1979). Under this analysis, conditions of confinement constitute deprivations of liberty without due process if they amount to punishment of the pretrial detainee. *Id.; Valencia v. Wiggins,* 981 F.2d 1440, 1445 (5th Cir.1993); *Harris v. Angelina County, Tex.,* 31 F.3d 331 (5th Cir.1994). In deciding whether a condition of confinement amounts to "punishment" under a due process analysis, the test is whether the disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose. *Bell v. Wolfish,* 441 U.S. 520, 539 (1979); *Valencia v. Wiggins,* 981 F.2d 1440, 1445 (5th Cir. 1993); *Harris v. Angelina County, Tex.,* 31 F.3d 331 (5th Cir. 1994). Even where a state actor may not want to subject a detainee to inhumane conditions of confinement or abusive jail practices, its intent to do so is nevertheless presumed when it incarcerates the detainee in the face of such known conditions and practices. *Hare v. City of Corinth, Miss.,* 74 F.3d 633, 644 (5th Cir. 1996).

The competent summary judgment evidence submitted by the defendants establishes the plaintiff was not subjected to an unconstitutional condition of confinement at PPCC because the water supply at the facility was not contaminated with unsafe levels of arsenic as alleged by the plaintiff. In support of their Motion, defendants LCS and Hines have submitted the affidavit of Richard Harbison who served in the capacity of risk manager for LCS from 1999 until February of 2015, when all holdings of LCS were sold. Harbison's duties included maintaining custody of claim files, management of civil claims relating to PPCC, and monitoring all notices to be placed or posted at PPCC. Harbison states that, during his employment, PPCC was never fined by the EPA for any health based contaminant found in its water supply, and there were never any

notices posted at PPCC regarding unhealthy levels of arsenic or other carcinogenic contaminants present in the water at PPCC.

Harbison's statements are supported by the public records produced by LCS and Hines in discovery. A search of the records of the Environmental Protection Agency reveals that from 2007 – 2017, the State of Louisiana did not report any health based violations for the water system at PPCC to the EPA. *See* R. Doc. 308-1. Additional documents produced in discovery show that while arsenic was present in the water at PPCC each test revealed that the highest amount of arsenic detected met the EPA standard for arsenic and was deemed to be a low level of arsenic. *See* R. Docs. 308-2 and 308-3.

In opposition to the Motion for Summary Judgment the plaintiff relies upon his Declaration which is primarily composed of speculative and conclusory allegations which fail to make a showing sufficient to establish the existence of the essential elements of the plaintiff's case for which he will bear the burden of proof at trial. The Fifth Circuit has "repeatedly held that self-serving affidavits, without more, will not defeat a motion summary judgment." *Tyler v. Cedar Hill Indep. Sch. Dist*., 426 Fed. Appx. 306, 309 (5th Cir. 2011). The plaintiff's Declaration states what the plaintiff "believes" to be true. The plaintiff's self-serving statements are not the type of probative evidence required to defeat summary judgment. *See U.S. v. Lawrence*, 276 F.3d 193 (5th Cir. 2001).

The plaintiff speculates that because, in 2013, PPCC failed to test for total trihalomethanes and haloacetic acids, neither of which includes arsenic, the owner of PPCC, Michael LeBlanc, bribed persons responsible for testing the water at PPCC to conceal and destroy documents showing the true level of contaminants, presumably arsenic, in the water at PPCC. As such, the plaintiff suggests that between July 11, 2011 and April 28, 2014, the dates

of testing in the record which show low levels of arsenic in the water supply, the water at PPCC somehow became contaminated with unhealthy levels of arsenic during the time the plaintiff was detainee at PPCC, and that all evidence of such results and remedying of the alleged contamination was concealed or destroyed due to bribery on behalf of Michael LeBlanc. However, the documentation submitted by the defendants belies any such speculation. As previously mentioned, a search of the records of the Environmental Protection Agency reveals that from 2007 – 2017, the State of Louisiana did not report any health based violations for the water system at PPCC to the EPA. *See* R. Doc. 308-1.

Additionally, the record is devoid of any evidence, such as a citation or notice similar to the one issued in relation to testing for total trihalomethanes and haloacetic acids, suggesting that PPCC failed to conduct arsenic testing between 2011 and 2014. Rather, it appears that the defendants were no longer in possession of such documents by the time they were served with the Complaint herein. As noted in the defendants' discovery responses, LCS sold all of its assets and turned over all of its files to the purchaser in February of 2015. The Complaint herein was not filed until December 18, 2015, LCS was not served until approximately one year later, and discovery did not commence until February of 2017. Therefore, LCS was no longer in possession of certain information the plaintiff requested. *See* R. Doc. 308.

In short, the record before the Court shows that the highest amount of arsenic detected met the EPA standard for arsenic and was deemed to be a low level of arsenic. No summary judgment evidence supports the plaintiff's theory of causation. There is nothing in the record which shows that the plaintiff was subjected to an unconstitutional condition of confinement at

PPCC.[2]  Accordingly, the Court finds that the plaintiff has failed to adequately support his claim asserted against defendants LCS and Hines, and these defendants are therefore entitled to summary judgment as a matter of law, dismissing the plaintiff's claim asserted herein.

Finally, to the extent the plaintiff seeks to invoke the supplemental jurisdiction of this court over the plaintiff's state law claims against defendants LCS and Hines, a district court may decline the exercise of supplemental jurisdiction if a plaintiff's state law claims raise novel or complex issues of state law, if the claims substantially predominate over the claims over which the district court has original jurisdiction, if the district court has dismissed all claims over which it had original jurisdiction, or for other compelling reasons. 28 U.S.C. § 1367.  In the instant case, having found that the plaintiff's federal claims against defendants LCS and Hines should be dismissed, the exercise of supplemental jurisdiction over the plaintiff's state law claims against these defendants is declined.  Accordingly,

**IT IS ORDERED** that the Motion for Summary Judgment (R. Doc. 391) is **GRANTED**, and the plaintiff's claims against defendants LCS and Hines are dismissed, with prejudice.

**IT IS FURTHER ORDERED** that the exercise of supplemental jurisdiction over any state law claims against defendants LCS and Hines is declined.

**IT IS FURTHER ORDERED** that, there being not remaining defendants in this matter, this matter be dismissed in its entirety, with prejudice.  Judgment shall be entered accordingly.

Signed in Baton Rouge, Louisiana, on March 27, 2019.

_____
**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

---

[2] The plaintiff's Opposition contains many statements about the presence of benzene in the water at PPCC, and the plaintiff has included exhibits pertaining to benzene.  However, the plaintiff was denied leave to amend his Complaint with regards to the presence of benzene in the water supply at PPCC. The Court specifically noted that such amendment would be futile since the highest value of any regulated contaminants, including benzene, were farMarch 27, 2019 below the applicable Maximum Contaminant Levels.  *See* R. Doc. 368.  As such, the plaintiff's claims regarding benzene are not properly before this Court.